**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
―――――――――――――――――――――――――

**UNITED STATES OF AMERICA,**

                                                      **14-CR-215V**

           **-v-**

**BRANDON L. WASHINGTON,**

              **Defendant.**
―――――――――――――――――――――――――

**REPORT, RECOMMENDATION AND ORDER**

       This case was referred to the undersigned by the Hon. Lawrence J.

Vilardo, in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear

and report on dispositive motions.

**PRELIMINARY STATEMENT**

       The defendant, Brandon L. Washington ("the defendant"), is charged

along with a co-defendant, Clifton McDuffie, in a multiple count indictment with having

violated Title 21 U.S.C.  §§ 846, 841(a)(1) and 841(b)(1)(C).  Dkt. #1.  He has filed a

motion wherein he seeks "suppression of electronic eavesdrop and derivative evidence"

since "the eavesdrop application (13-MR-77) failed to comply with the necessity

requirement" and failed to comply with the disclosure requirements set forth in 18

U.S.C. §§ 2518 (1)(c) and 2518 (1)(e) respectively. Dkt.#s 94, 94-1, 105.  The

defendant also requests that a *Franks* hearing be conducted by this Court to resolve the

"necessity" issues raised by the defendant regarding the issuance of the Title III

Intercept Order of December 10, 2013, 13-MR-77, authorizing the wire interception of

the defendant's communications.  Dkt. #94-1.  The government has filed its opposition

to the defendant's motion.  Dkt. #s 92, 106.  Oral argument was heard by this Court and the matter was taken under advisement.

## FACTS[1]

On March 9, 2007, the Hon. William M. Skretny signed a Title III Order authorizing the interception of oral communications made on certain described telephones as part of the government's investigation relating to illegal drug activities. This Title III Order was assigned the number 07-MR-18 and did not contain any references to the defendant or to facilities utilized or attributed to the defendant.  This Order was extended by Judge Skretny on April 6, 2007 for an additional thirty (30) day period and was assigned the same number, i.e., 07-MR-18.

On April 16, 2007, Judge Skretny signed a Title III Order authorizing the interception of oral communications made over certain described target telephones relating to a drug investigation involving specifically named persons that did not include the defendant or any facilities utilized or attributed to the defendant, and this Order was assigned the number 07-MR-41.

A subsequent Title III Order was signed on May 18, 2007 and given the same number, *i.e.*, 07-MR-41 which authorized the "continued" interception of wire communications as previously authorized in the April 16, 2007 Order (07-MR-41).

---

[1] The facts herein are taken from the papers filed relating to defendant's motion to suppress and this Court's review of the Applications, affidavits and intercept Orders which are referenced herein.

However, the application for this Order identified the defendant as an "interceptee" along with a number of other interceptees as well as numerous "violators."

On June 15, 2007, a Title III Order was signed by Judge Skretny authorizing the interception of wire communications of the defendant and other named individuals as interceptees as well as others named as violators, and this Order was assigned the number 07-MR-81.  In paragraph nine (9) of the supporting affidavit, disclosure is made of the March 9, 2007 Order (07-MR-18) and its extension of April 6, 2007 (07-MR-18) as well as the Orders of April 16, 2007 (07-MR-41) and May 18, 2007 (07-MR-41).  The disclosure of the May 18, 2007 Order (07-MR-41) expressly lists the defendant and others as an "interceptee."

On December 10, 2013,  a Title III Order was signed by Judge Skretny authorizing the interception of wire communications of the defendant and his co-defendant, Clifton McDuffie, as named "interceptees" (13-MR-77).  In paragraph nine (9) of the supporting affidavit, disclosure is made of the June 15, 2007 Order (07-MR-81) and the fact that telephone communications of the defendant were being monitored on two identified telephone numbers for a period of thirty (30) days from June 15, 2007. The affiant states that "at the conclusion of this interception period, Washington was not arrested."  However, there is no disclosure of the prior Orders of March 9, April 6, April 16 and May 18, 2007.

The defendant and his co-defendant McDuffie were indicted on December 9, 2014.  Dkt. #1.  In the process of providing discovery materials to the defendant,

counsel for the government discovered the government's failure to make disclosure of the Order of May 18, 2007, 07-MR-41, in its application for the December 10, 2013 Order, 13-MR-77 and so advised Judge Skretny by letter dated March 25, 2015. This failure to make disclosure is attributed to "inadvertent oversight" by the government. (Exhibit B attached to Dkt. #94-3). However, no such corrective disclosure of the prior Orders of March 9, April 6, and April 16, 2007 was made by the government to Judge Skretny.

## DISCUSSION AND ANALYSIS

### A.    The "Necessity" Issue

The defendant argues that "the eavesdrop application [of December 10, 2013] failed to establish necessity for electronic surveillance." Dkt. #94-1, pp. 16-19. In support of this argument, the defendant relies heavily on the holding of the Second Circuit Court of Appeals in *United States v. Lilla*, 699 F.2d 99 (2d Cir. 1983). This argument is rejected based on the later holding of the Second Circuit Court of Appeals in *United States v. Torres*, 901 F.2d (2d Cir.), *cert. denied* 498 U.S. 906 (1990).

Basically, the defendant is requesting that a review of Judge Skretny's decision in issuing the Intercept Order of December 10, 2013 be made so as to conclude that such order was improperly issued. The role of this Court in conducting such a review is no different than that conducted by a court of appeals and therefore,

the admonition of the Second Circuit Court of Appeals is appropriately applied in this

process wherein the Court stated:

> "In reviewing a ruling on a motion to suppress wiretap
> evidence, we accord deference to the district court."  *Miller*,
> 116 F.3d at 663 (quoting *Torres*, 901 F.2d at 231).  Our role
> in reviewing the issuance of a wiretap order is not to make a
> *de novo* determination of the sufficiency of the application,
> "but to decide if the facts set forth in the application were
> minimally adequate to support the determination that was
> made."  *Id.*

*United States v. Diaz*, 176 F.3d 52, 109 (2d Cir.), *cert. denied* by *Rivera v. United*

*States*, 528 U.S. 875 (1999).

Since the holding in *United States v. Torres*, 901 F.2d 205 (2d Cir.), *cert.*

*denied* 498 U.S. 906 (1990), addresses the issues raised by the defendant herein on

the issue of whether 18 U.S.C. § 2518(1)(c) was complied with, it is worthwhile to

sacrifice brevity and set forth that Court's ruling in detail.

> Section 2518(1)(c) requires that an application for such an
> interception shall include "a full and complete statement as
> to whether or not other investigative procedures have been
> tried and failed or why they reasonably appear to be unlikely
> to succeed if tried or to be too dangerous. . . ."  Similarly,
> section 2518(3)(c) requires the judge to whom an application
> for a wiretap is made to determine, as a condition of
> authorizing the tap, that "normal investigative procedures
> have been tried and have failed or reasonably appear to be
> unlikely to succeed if tried or to be too dangerous. . . ."
>
> The application for the wiretap in this case was based upon
> a thirty-six page affidavit by DEA agent Timothy J. Sullivan
> dated May 27, 1987.  Flores contends that when the

application for a wiretap was made, traditional law enforcement methods had already achieved "extraordinary success . . . in penetrating the deepest reaches of the Torres Organization," and that the "affidavit utterly failed to establish, even on a superficial level, that less intrusive techniques had not been successful and could not be successful." In advancing this position, Flores points out that our decision in *United States v. Lilla*, 699 F.2d 99 (2d Cir. 1983), precludes the authorization of wiretaps based upon "generalized and conclusory statements that other investigative procedures would prove unsuccessful," *id*. at 104. Flores also argues that it does not suffice to show that a case belongs to some general class of cases which require wiretap investigation, citing *United States v. Kalustian*, 529 F.2d 585, 589 (9th Cir. 1975) (gambling case).

We are unpersuaded, and conclude that the application in this case provided a sufficient basis for authorizing the Flores wiretap. Section 2518 "is simply designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." *United States v. Kahn*, 415 U.S. 143, 153 n. 12, 94 S.Ct. 977, 983 n. 12, 39 L.Ed.2d 225 (1974). As we have stated:

> "[T]he purpose of the statutory requirements is not to preclude resort to electronic surveillance until after all other possible means of investigation have been exhausted by investigative agents; rather, they only require that the agents inform the authorizing judicial officer of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods."

*United States v. Vazquez*, 605 F.2d 1269, 1282 (2d Cir. 1979) (quoting *United States v. Hinton*, 543 F.2d 1002, 1011 (2d Cir.), *cert. denied*, 429 U.S. 980, 97 S.Ct. 493, 50 L.Ed.2d 589 (1976)), *cert. denied*, 444 U.S. 981, 100 S.Ct. 484, 62 L.Ed.2d 408 (1979), 1019, 100 S.Ct. 674, 62 L.Ed.2d 649 (1980); *see also United States v. Fury*, 554 F.2d 522, 530 (2d Cir), *cert. denied*, 433 U.S. 910, 97 S.Ct. 2978, 53 L.Ed.2d 1095 (1977).

The role of an appeals court in reviewing the issuance of a wiretap order, furthermore, "is not to make a *de novo*

determination of sufficiency as if it were a district judge, but to decide if the facts set forth in the application were minimally adequate to support the determination that was made."  *United States v. Scibelli*, 549 F.2d 222, 226 (1st Cir.) (collecting cases), *cert. denied*, 431 U.S. 960, 97 S.Ct. 2687, 53 L.Ed.2d 278 (1977).  And, as the *Scibelli* court went on to say:

> [I]n determining the sufficiency of the application a reviewing court must test it in a practical and common sense manner.  The legislative history makes clear that section 2518(1)(c) is not designed to force the Government to have exhausted all "other investigative procedures".
>
> "The judgment [of the district judge] would involve a consideration of all the facts and circumstances.  Normal investigative procedure would include, for example, standard visual or aural surveillance techniques by law enforcement officers, general questioning or interrogation under an immunity grant, use of regular search warrants, and the infiltration of conspiratorial groups by undercover agents or informants.  Merely because a normal investigative technique is theoretically possible, it does not follow that it is likely.  What the provision envisions is that the showing be tested in a practical and commonsense fashion.
>
> S.Rep. No. 1097, 90th Cong., 2d Sess., 1968 U.S.Code Cong. & Admin.News, p. 2190 (citations omitted).  *Scibelli*, 549 F.2d at 226.

*Id.* at 231-232) (brackets included); *See also United States v. Diaz. Supra 111.*

The application for the December 10, 2013 intercept order (13-MR-77) was based upon a sixty-five (65) page affidavit of S.A. Nastoff of the DEA sworn to

December 10, 2013 wherein he describes in great detail the history of the investigation relating to the defendant and the co-defendant herein and the normal investigative techniques that were tried and failed or were unlikely to succeed if continued or tried or were considered too dangerous to employ.  He also describes in great detail the normal investigative techniques that were utilized in the investigation and found probative but failed to yield sufficient evidence as well as the identities of all the participants and co-conspirators to establish guilt beyond a reasonable doubt of those involved in the illegal drug conspiracy being investigated.  In total, S.A. Nastoff advised in his affidavit that the traditional methods of investigation would not be successful in obtaining the objectives being sought in the overall investigation relating to illegal drug activities.  (S.A. Nastoff Affidavit sworn to December 10, 2013, pp. 41-61, ¶s 74-103).

Giving proper deference to Judge Skretny's review and acceptance of the sixty-five (65) page affidavit of S.A. Nastoff sworn to December 10, 2013 in support of the application for the Intercept Order of December 10, 2013 (13-MR-77) and his decision to grant that application, it is concluded that Judge Skretny "properly found that conventional investigative techniques had been exhausted and that alternatives to wire interception would be unlikely to succeed or would be too dangerous."  Therefore, it is recommended that defendant's motion to suppress on this claim be denied.

## B.    The Non-Disclosure of Prior Intercept Orders

The defendant argues that the failure of the government to advise Judge Skretny of the prior Title III Orders of March 9, 2007 (07-MR-18) and May 18, 2007 (07-

MR-41) in the application submitted for the Order of December 10, 2013 (13-MR-77) "deprived the Court of information that Mr. Washington had previously been identified in 2007 as a drug courier in a multi-state drug distribution network."  Dkt. #94-1, p. 9, ¶ 27. Further, it is argued that this disclosure failure constituted non-compliance with the requirements set forth in 18 U.S.C. § 2518(1)(e).  Dkt. #94-1, p. 9, ¶ 28.

> Title 18 U.S.C. § 2518(e) requires that each application shall include:
>
> a full and complete statement of the facts concerning all previous applications known to the individual authorizing and making the application, made to any judge for authorization to intercept, or for approval of interceptions of, wire, oral or electronic communications involving any of the same persons, facilities or places specified in the application, and the action taken by the judge on each application.

### 1.    The Intercept Order of March 9, 2007 (07-MR-18)

The Application for the March 9, 2007 Order sought authorization to intercept wire communications involving a number of named individuals who were allegedly involved in the possession and distribution of controlled substances in violation of 21 U.S.C. §§841(a)(1), 843(b) and 846.  Neither the defendant nor the co-defendant in the present case were referenced in any way in this Application.  The affidavit of S.A. Nanna of the DEA submitted in support of the Application specifically lists a number of individuals by name and describes them as either "interceptees" or "violators."  No reference is made to the defendant and co-defendant in the present case.  He also describes specific telephone devices that would be the targets of the intercept order, none of which appear to relate in any way to the defendant or co-defendant.  This

affidavit consists of 139 pages describing in great detail the alleged activity and involvement of the aforesaid named "interceptees" and "violators," and nowhere in the 139 pages can it be reasonably concluded that the investigation and Application for the Order in any way included the defendant and the co-defendant in this case.

## 2.    The Intercept Order of April 6, 2007 (07-MR-18)

The Application for the April 6, 2007 Order sought authorization to intercept wire communications involving a number of named individuals who were previously named in the Application and Order of March 9, 2007 (07-MR-18).  The April 6, 2007 Application seeks a "continuation" of the interception of wire communications that was previously authorized in the March 9, 2007 Order.  In support of this Application, a 66 page affidavit of S.A. Lugo of the DEA was submitted to Judge Skretny on April 6, 2007.  This affidavit lists specific individuals as alleged "interceptees" or "violators" who had been named previously in the March 9, 2007 Application.  He also describes specific telephone devices that would be the targets of the "continued" intercept order, none of which appear to relate in any way to the defendant or co-defendant.  The affidavit expressly discloses the prior March 9, 2007 Order (07-MR-18) to Judge Skretny and incorporates by reference the Application and affidavit that was filed in support of the March 9, 2007 Order.  (07-MR-18)  It also contains a listing of prior intercept orders issued by Judge Skretny in February, April, and May of 2004 as well as an extension order issued on July 12, 2004 which were not disclosed in the Application and affidavit seeking authorization for the March 9, 2007 Order.  The explanation for this non-disclosure is that these prior orders "did not come up in the

check of DEA and FBI files" that was conducted "on or about February 7, 2007."

Subsequently, it was learned that one of the named interceptees in the March 9, 2007

Application had previously been named as such in the Applications and Orders of

February, April, May, and July of 2004.

A review of the 66 page affidavit of S.A. Lugo establishes that there is

nothing contained therein that would cause one to reasonably conclude that the

"continued" investigation described therein, as well as that contained in S.A. Nanna's

affidavit which is incorporated by reference that the defendant and the co-defendant

herein were in any way subjects of this ongoing investigation for which the April 6, 2007

"continuation" Order (07-MR-18) was being sought.

### 3.    The Intercept Order of April 16, 2007 (07-MR-41)

The Application for the April 16, 2007 Order sought authorization to

intercept wire communications involving a number of named individuals who were

allegedly involved in the possession and distribution of controlled substances in violation

of 21 U.S.C. §§ 841(a)(1), 843(b) and 846.  The Application and 94 page affidavit of

S.A. Lugo of the DEA lists the names of the individuals identified as "interceptees"

and/or "violators" in the April 6, 2007 Application and affidavit as well as a few newly

named individuals.  However, neither the defendant nor the co-defendant are identified

in any way as "interceptees" and or "violators" in the Application or the affidavit in

support thereof for the April 16, 2007 Order.  He also describes specific telephone

devices that would be the targets of the intercept order, none of which appear to relate

in any way to the defendant or co-defendant.  S.A. Lugo also expressly discloses the prior Order of March 9, 2007 (07-MR-18) and the previous Orders issued by Judge Skretny in February, April, May, and July of 2004.  He also advises that on " March 23, 2007, New York State Supreme Court Judge Penny Wolfgang issued an order (2007-156) authorizing the interception of wire communications for a 30 day period "as to a particular telephone number and person and identifies certain individuals as being "interceptees" and/or "violators" for which the Order was sought.  However, neither the Application nor the affidavit of S.A. Lugo reference the prior Order of April 6, 2007 (07-MR-18) issued by Judge Skretny.  Presumably this would be due to the fact that the review conducted to determine the existence of prior applications was conducted on April 5, 2007.  (*See* Affidavit of S.A. Lugo sworn to April 16, 2007, page 24, footnote 1).

Nevertheless, a review of the Application and the 94 page affidavit of S.A. Lugo establishes that there is nothing contained therein that would cause one to reasonably conclude that this ongoing investigation, at this point in time, included the defendant and/or the co-defendant in this case.

Since the Applications and intercept Orders of March 9, 2007 (07-MR-18), April 6, 2007 (07-MR-18) and April 16, 2007 (07-MR-41) did not concern the defendant and/or the co-defendant, there was no legal requirement under 18 U.S.C. § 2518(e) that disclosure of these Applications and Orders be made by the government in its application for the intercept Order of December 10, 2013.  *United States v. Salemme*, 978 F.Supp. 343, 348 (D. Mass. 1997).

### 4.     The Intercept Order of May 18, 2007 (07-MR-41)

Although the April 16, 2007 intercept order (07-MR-41) expired or

terminated on May 17, 2007, this Order of May 18, 2007 was given the same

identification number that had been assigned to the April 16, 2007 Order, to wit, 07-MR-

41.  The Application submitted for the Order of May 18, 2007 indicates that a request is

being made for "the continued interception of wire communications and to intercept

electronic communications."  It would appear that Judge Skretny considered the

Application as a request to "continue" the authorization to intercept wire

communications and electronic communications previously granted in the April 16, 2007

Order and thus the reason for assigning the same identification number.  In support of

this Application, an 84 page affidavit of S.A. Lugo was submitted wherein he lists

specific individuals as alleged "interceptees" or "violators" with the addition of three

newly named "interceptees," one of whom is the defendant.  He also specifically

describes a specific telephone subscribed to by a particular individual as the "target

telephone IV" for which authorization to intercept is being sought.  S.A. Lugo also

expressly discloses the prior intercept Orders of March 9, April 6, April 16, 2007 and the

prior intercept orders of February, April, May, and July of 2004 as well as the previous

intercept orders of Judge Wolfgang issued in March and April of 2007.  As a result, full

compliance with the requirements of 18 U.S.C. § 2518(1)(e) was had with respect to this

Order of May 18, 2007 (07-MR-41).

### 5.    The Intercept Order of June 15, 2007 (07-MR-81)

In support of the Application for this Order, an 82 page affidavit of S.A. Nanna was submitted wherein he expressly discloses the prior intercept orders of March 9, April 6, April 16, May 18, 2007 and incorporates by reference the prior applications and affidavits submitted to Judge Skretny in support of those orders.  He also discloses the prior intercept orders issued by Judge Skretny in February, March, April, May, and June of 2004 as well as prior New York State intercept orders issued by Hon. Penny Wolfgang, J.S.C. in March and April of 2007.

S.A. Nanna also specifically lists the defendant as an "interceptee" along with a number of other named individuals in his affidavit sworn to June 15, 2007 for which the intercept order of June 15, 2007 was being sought.  He also describes in some detail the alleged illegal activities of the defendant as learned by law enforcement utilizing the prior intercept order of May 18, 2007 (07-MR-41) and the New York State intercept orders of March and April 2007 which he asserts establishes "probable cause" for the issuance of the intercept order as to the defendant.  As a result, full compliance with the requirements of 18 U.S.C. § 2518(1)(e) was had with respect to this Order of June 15, 2007 (07-MR-81).

### 6.    The Intercept Order of December 10, 2013 (13-MR-77)

The Application for this intercept order specifically references only the defendant and co-defendant herein as "interceptees" and one individual as a "violator" for which authorization to intercept wire communications on a specific telephone facility

utilized by the defendant is made.  In support of this Application, a sixty-five page affidavit of S.A. Nastoff was submitted to Judge Skretny on December 10, 2013.  In that affidavit, S.A. Nastoff disclosed the prior June 15, 2007 intercept Order (07-MR-81) and advised Judge Skretny that the defendant, using two different telephone facilities, was monitored for a period of thirty days, and at the conclusion of this thirty day period, the defendant "was not arrested" but does not explain why.  No disclosure of the May 18, April 16, April 6, March 9, 2007 Orders was made to Judge Skretny in this affidavit of S.A. Nastoff.

S.A. Nastoff describes in great detail the use of confidential informants and other investigative techniques utilized by the agents in obtaining information to establish "probable cause" for the issuance of this intercept order.  The information developed and utilized in support of the application all takes place in 2013.  There is no discernable reference to information obtained from the use of the prior intercept Orders of March 9, April 6, April 16, May 18, and June 15, 2007.

The defendant argues that the failure of the government to advise Judge Skretny of the prior Title III Order of May 18, 2007 (07-MR-41) in the application submitted for the Order of December 10, 2013 (13-MR-77) "deprived the Court of information that Mr. Washington had previously been identified in 2007 as a drug courier in a multi-state drug distribution network."  He also claims that "the subject matter of [the Orders of May 18 and June 15, 2007] 07-MR-41 and 07-MR-81 are not fully referenced in the warrant application for 13-MR-77 [December 10, 2013]."  Dkt. #94-1, p. 9, ¶ 27.

Further, it is argued that this disclosure failure constituted non-compliance with the requirements set forth in 18 U.S.C. § 2518(1)(e), *i.e.*, that "a full and complete statement of the facts concerning all previous applications known to the individual authorizing and making the application made to any judge for authorization to intercept or for approval of interceptions of wire, oral or electronic communications involving any of the same persons, facilities or places specified in the application, and the action taken by the judge on each such application" be made in the application.  Dkt. #94-1, p. 9, ¶ 28).

For the reasons hereinafter stated, this Court disagrees with the assertions made by the defendant and therefore rejects them since they lack legal merit.

In the sixty-five page affidavit of S.A. Nastoff submitted to Judge Skretny on December 10, 2013, "prior electronic surveillance" disclosure is made in paragraph 9 on page 10 of the affidavit wherein S.A. Nastoff states that on June 15, 2007, Judge Skretny "issued an electronic surveillance order authorizing the interception of wire communications over [specifically identified] telephone facilities" which "were being utilized by [the defendant] to further his drug trafficking operations" and that the "interception occurred for a period of thirty (30) days" from the date of the Order and that "at the conclusion of this interception period, [the defendant] was not arrested."  Not only was Judge Skretny made aware of the prior intercept Order of June 15, 2007 involving the defendant, he was expressly advised as to the results of that interception, namely, that the defendant was not arrested.

16

Admittedly, the Application and affidavit submitted to Judge Skretny for the intercept Order of December 10, 2013 (13-MR-77) failed to expressly disclose the issuance of the May 18, 2007 intercept Order issued by Judge Skretny (07-MR-41). However, such disclosure was impliedly made by reason of the disclosure of the June 15, 2007 Order (07-MR-81) since the affidavit of S.A. Nanna sworn to and submitted to Judge Skretny on June 15, 2007 expressly describes the prior Order of May 18, 2007 (07-MR-41) issued by Judge Skretny wherein the defendant is specifically named, along with others, as an "interceptee."  *See* May 18, 2007 Order (07-MR-41) paragraph 9(d), pages 14-15.  The alleged criminal activities of the defendant are also described in detail in paragraphs 12, 15, 19, 26-30, 34 and 37 of S.A. Nanna's affidavit. S.A. Nanna expressly incorporated by reference the May 18, 2007 Application and affidavit in his affidavit of June 15, 2007 submitted to Judge Skretny in support of the Application for the June 15, 2007 Order.  *See* Paragraph 9(d), page 14.

If Judge Skretny had any concerns about prior events in this case when considering the Application for the December 10, 2013 Order (13-MR-77), he could have easily reviewed the June 15, 2007 Order and Application and affidavit (07-MR-81), which review would also disclose the prior Order of May 18, 2007 (07-MR-41) which he could have also reviewed.  In substance, Judge Skretny was provided a historical thread relating to the prior investigations of the defendant in the December 13, 2013 affidavit of S.A. Nastoff.  This historical thread would not only lead him to the prior intercept Order of May 18, 2007 (07-MR-41), it would have enabled him to learn of the Orders of April 16 (07-MR-41), April 6 (07-MR-18), and March 9, 2007 (07-MR-18) all of which were

expressly incorporated by reference in the affidavit of S.A. Lugo sworn to May 18, 2007 and submitted in support of the Application for the May 18, 2007 Order (07-MR-41). Therefore, I reject the defendant's claim that "there was no way for Judge Skretny to know that agents possessed relevant and material information about [the defendant] from an earlier stage of investigation."  Dkt. #105, p. 3.  In fact, nothing has been presented by the defendant to establish or even indicate that Judge Skretny did not review his prior Orders of June 15, 2007 (07-MR-81) and May 18, 2007 (07-MR-41) before he signed his Order of December 10, 2013 (13-MR-77).

It is also pointed out that there was a gap of approximately six and one-half years between the issuance of the December 10, 2013 Order (13-MR-77) and the last prior Order of May 18, 2007 (07-MR-41).  Any information gleaned from the intercept Order of May 18, 2007 (07-MR-41) would certainly have been stale for purposes of establishing probable cause for the issuance of the December 10, 2013 Order (13-MR-77).  As the Second Circuit Court of Appeals has stated, "the standard for probable cause applicable to [18 U.S.C.] § 2518 is 'the same as the standard for a regular search warrant.'" *United States v. Fury*, 554 F.2d 522, 530 (2d Cir. 1977).  Also, "it is elementary that probable cause needed to validate the issuance of an authorization for a wiretap must exist at the time of the issuance."  *United States v. Martino*, 664 F.2d 860, 866 (2d Cir. 1981); *see also Rivera v. United States*, 928 F.2d 592, 602 (2d Cir. 1991). Therefore, except for the provisions in 18 U.S.C. § 2518(1)(e), whatever occurred in 2007 would not have been relevant to the issue of probable cause for the issuance of the December 10, 2013 Order (13-MR-77).

### C.    The Violation of 18 U.S.C. § 2518(1)(e)

Since the defendant had been named as an "interceptee" in the Application seeking the Title III Order dated May 18, 2007 (07-MR-41), the government was obligated to disclose the existence of that Order to Judge Skretny in its Application for the Intercept Order of December 10, 2013.  Its failure to do so constitutes a violation of 18 U.S.C. § 2518(1)(e).  However, such violation does not automatically require the suppression of evidence obtained through the use of the Intercept Order dated December 10, 2013 even though § 2518(1)(e) "goes beyond the requirements of the Fourth Amendment."  The question of suppression must be analyzed in the context of the statutory exclusionary provisions of §§ 2518 and 2518(1).  *See United States v. Donovan*, 429 U.S. 413, 425 (1977); *United States v. Ferrara* , 771 F. Supp 1266 (D. Mass. 1991) cited with approval in *United States v. Bianco*, 998 F.2d 1112 (2d Cir. 1993).

Since § 2518(1)(e) "constitutes a non-central provision of Title III, suppression is neither permissible or appropriate" if the failure by the government to make disclosure was done inadvertently or in good faith.  *Ferrara, supra* at 1314; *Bianco, supra* at 1128; *see also United States v. Van Horn*, 789 F.2d 1492, 1500, n. 6 (11th Cir. 1986), *cert. Denied*, 479 U.S. 954 (1986), *United States v. Sullivan*, 586 F. Supp. 1314, 1323 (D. Mass. 1984).

When the government discovered that the May 18, 2007 Order (07-MR-41) had not been disclosed to Judge Skretny in its application for the December 10, 2013 Order (13-MR-77), counsel for the government advised Judge Skretny by letter dated March 25, 2015 of this failure.  As indicated in counsel's letter to Judge Skretny, this discovery was made during the course of reviewing and providing discovery material to the defendant and the co-defendant who had been indicted on December 9, 2014.  *See* Exhibit B attached to Dkt. #94-3.  The fact that disclosure of the June 15, 2007 Order (07-MR-81) was made to Judge Skretny in the Application for the December 10, 2013 Order (13-MR-77) causes this Court to conclude that the failure to also disclose the existence of the May 18, 2007 Order (07-MR-41) was done inadvertently and in good faith since the June 15, 2007 Application expressly disclosed the prior intercept Order of May 18, 2007 as well as the Orders of March 9, April 6 and April 16, 2007 and the Orders of February, March, April, May and June of 2004 as well as the prior New York State intercept orders issued by the Hon. Penny Wolfgang, J.S.C. in March and April of 2007.  Once again, the June 15, 2007 Application provided a historical thread relating to prior investigation of the defendant.  If there was going to be deliberate or bad faith withholding of prior investigations and intercept orders involving the defendant, the government presumably would not have disclosed the June 15, 2007 Order.

The defendant has not put anything before the Court that would indicate that the government acted in bad faith when it failed to disclose the May 18, 2007 Order (07-MR-41) in its Application for the December 10, 2013 Order (13-MR-77).  Therefore, it

is recommended that defendant's motion to suppress evidence obtained from the use of the December 10, 2013 intercept Order be denied.

### D.    Defendant's Request for a *Franks* Hearing

The defendant asserts that "a *Franks*[2] hearing be conducted and that prior to that hearing the government be directed to provide the defense with all documents and information which might tend to show that the government had failed to disclose all the information required by statute." Dkt. #94-1, p. 23, ¶ 58. The main thrust of the defendant's argument is that the government failed to comply with the "necessity" requirement under the statute by making full disclosure to the Court concerning the "necessity" for electronic surveillance. In support of this claim, the defendant argues that "there was a six year gap between 07-MR-81 (2007) and 13-MR77 (2013)" and that "during this gap in electronic surveillance, evidently the government was able to acquire enough information and/or evidence from conventional techniques to target [the defendant]." Dkt. #94-1, pp. 24-27, ¶s 54-62. The defendant further asserts that "the prosecution's failure to seek an extension order immediately upon expiration of the initial orders, 7-MR-41 and 7-MR-81, indicates that the investigative objectives had been obtained and that any additional electronic surveillance was not necessary." Dkt. #94-1, p. 24, ¶ 63.

Notwithstanding the provisions set forth in 18 U.S.C. §§ 2515 and 2518(10)(a), the Second Circuit, along with a number of other circuits, applies a "*Franks* analysis to alleged falsehoods or omissions in wiretap affidavits and applications under

---

[2] *Franks v. Delaware*, 438 U.S. 154 (1978).

Title III.  *United States v. Bianco*, 998 F.2d 1112, 1126 (2d Cir. 1993); *United States v. Ferguson*, 758 F.2d 843, 848 (2d Cir.), *cert. denied*, 474 U.S. 841 (1985); *United States v. Rajaratnam,* 719 F.3d 139, 151-152 (2d Cir. 2013).

In *Franks v. Delaware*, the United States Supreme Court set forth the following standards for challenging an affidavit supporting a search warrant:

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine.  There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof.  They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons.  Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.  Allegations of negligence or innocent mistake are insufficient. . . .  Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.

438 U.S. 154, 171-72 (1978) (footnote omitted); *see also United States v. Miller*, 116 F.3d 641, 644 (2d Cir. 1997).

Material omissions from an affidavit are governed by the same rules as false statements. *United States v. Campino*, 890 F.2d 588, 592 (2d Cir. 1989), *cert. denied*, 498 U.S. 866 (1990); *United States v. Ferguson*, 758 F.2d 843, 848 (2d Cir.), *cert. denied*, 474 U.S. 1032 (1985); *Rivera v. United States*, 928 F.2d 592, 604 (2d Cir. 1991); *United States v. Reilly*, 76 F.3d 1271 (2d Cir. 1996).  Accordingly, "[i]f, after

setting aside the allegedly misleading statements or omissions, the affidavit,

nonetheless, presents sufficient information to support a finding of probable cause, the

district court need not conduct a *Franks* hearing."  *United States v. Salameh*, 152 F.3d

88, 113 (2d Cir. 1998), *cert. denied sub nom. Abouhalima v. United States*, 525 U.S.

1112 (1999); *United States v. Canfield,* 212 F.3d 713, 717-718 (2d Cir. 2000).


Because the Court's opinion in *United States v. Rajaratnam* expressly

addresses the issue of "omissions and "necessity" in a wiretap application, brevity is

once again sacrificed by setting forth the Court's reasoning in detail in resolving the

issues herein.


> Although omissions "are governed by the same rules" as
> misstatements, United States v. Ferguson, 758 F.2d 843, 848
> (2d Cir.1985), "the literal Franks approach [does not] seem[ ]
> adequate because, by their nature, omissions cannot be
> deleted"; therefore "[a] better approach ... would be to ...
> insert the omitted truths revealed at the suppression hearing,"
> United States v. Ippolito, 774 F.2d 1482, 1487 n. 1 (9th
> Cir.1985). Accordingly, we have held that "[t]he ultimate
> inquiry is whether, after putting aside erroneous information
> and [correcting] material omissions, there remains a residue
> of independent and lawful information sufficient to support [a
> finding of] probable cause [or necessity]." Canfield, 212 F.3d
> at 718 (internal quotation marks omitted); see also United
> States v. Martin, 615 F.2d 318, 328 (5th Cir.1980) ("[W]e [are]
> required to determine whether, if the omitted material had
> been included in the affidavit, the affidavit would still establish
> probable cause [or necessity].... If it would not, we would be
> required to void the warrant and suppress the evidence
> seized pursuant to it."). 146


\*   \*   \*

A wiretap applicant does not necessarily act with "reckless disregard for the truth" simply because he or she omits certain evidence that a reviewing court, in its judgment, considers to be "clearly critical." Rather, the reviewing court must be presented with credible and probative evidence that the omission of information in a wiretap application was "designed to mislead" or was "made in reckless disregard of whether [it] would mislead." Awadallah, 349 F.3d at 68 (emphasis and internal quotation marks omitted). As we have said:

"An affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation. However, every decision not to include certain information in the affidavit is 'intentional' insofar as it is made knowingly. If ... this type of 'intentional' omission is all that Franks requires, the Franks intent prerequisite would be satisfied in almost every case.... [Rather,] Franks protects against omissions that are designed to mislead, or that are made in reckless disregard of whether they would mislead, the magistrate."

Id. at 67–68 (quoting United States v. Colkley, 899 F.2d 297, 300–01 (4th Cir.1990) (alterations in Awadallah; emphases in Colkley )). In a similar vein, the Seventh Circuit has explained:

To prove reckless disregard for the truth, the defendants [must] prove that the affiant in fact entertained serious doubts as to the truth of his allegations. Because states of mind must be proved circumstantially, a factfinder may infer reckless disregard from circumstances evincing obvious reasons to doubt the veracity of the allegations."

United States v. Whitley, 249 F.3d 614, 621 (7th Cir.2001) (internal quotation marks and alterations omitted); see also United States v. Williams, 718 F.3d 644, 649–50, No. 11–3129, 2013 WL 2149897, at *5 (7th Cir. May 20, 2013) (applying the subjective standard for recklessness to omissions from an affidavit). But see Wilson v. Russo, 212 F.3d 781, 788 (3d Cir.2000) ("[O]missions are made with reckless disregard if an officer withholds a fact in his ken that '[a]ny reasonable person would have known ... was the kind of thing the judge would wish to know.' " (quoting United

States v. Jacobs, 986 F.2d 1231, 1235 (8th Cir.1993))). 154 -
155.

Of course, the "reckless disregard" aspect of a Franks inquiry
can sometimes be inferred from the omission of critical
information in a wiretap application. See Rivera v. United
States, 928 F.2d 592, 604 (2d Cir.1991) ( "Recklessness may
be inferred where the omitted information was clearly critical
to the probable cause determination." (emphasis supplied)
(internal quotation marks omitted)). Subjective intent, after all,
is often demonstrated with objective evidence. But such an
inference is not to be automatically drawn simply because a
reasonable person would have included the omitted
information, cf. *155 Farmer, 511 U.S. at 842, 114 S.Ct.
1970, and the inference is particularly inappropriate where
the government comes forward with evidence indicating that
the omission resulted from nothing more than negligence, or
that the omission was the result of a considered and
reasonable judgment that the information was not necessary
to the wiretap application.

*United States v. Rajaratnam*, 719 F.3d 139, 154–55 (2d Cir. 2013)

The defendant's assertion that "there was a six year gap between 07-MR-
81 (2007) and 13-MR-77 (2013)" and that "during the gap in electronic surveillance,
evidently the government was able to acquire enough information and/or evidence from
conventional techniques to target [the defendant]" is nothing more than speculation.  The
defendant's additional assertion that "the prosecution's failure to seek an extension order
immediately upon expiration of the initial orders, 7-MR-41 and 7-MR-81, indicates that
the investigative objectives had been obtained and that any additional electronic
surveillance was not necessary" is nothing more than pure conjecture.  Such speculation

and conjecture fail to comply with the requirements of *Franks* in order to require the holding of a hearing.  *Franks*, 438 U.S. at 170.

The fact that a period of six years elapsed between the intercept Order of June 15, 2007 (07-MR-81) and the application for the December 10, 2013 intercept Order (13-MR-77) adds nothing of value to support the defendant's request for a *Franks* hearing since explanation of the time gap was not "material" for the finding of probable cause and/or "necessity" for the issuance of the December 10, 2013 Order (13-MR-77). The defendant has failed to establish that the claimed "omitted" information was "designed to mislead" or was "made in reckless disregard of whether [it] would mislead. *Awadallah*, 349 F.3d at 68."  *United States v. Rajaratnam, supra* at 154; *United States v. Miller*, 116 F.3d 641, 644 (2d Cir. 1997).

In his affidavit sworn to December 10, 2013 and submitted in support of the application fo the intercept Order of December 10, 2013 (13-MR-77), S.A. Nastoff expressly advised Judge Skreny of the June 15, 2007 intercept Order (07-MR-81) relating to the defendant and disclosed that the defendant was not arrested even though he was described as being involved in a "drug trafficking operation."  13-MR-99, p. 10, ¶ 9.  As previously stated, the June 15, 2007 affidavit of S.A. Nanna submitted in support of the application for the intercept Order of June 15, 2007 (07-MR-81) discloses the prior intercept orders obtained, including the Order of May 18, 2007 (07-MR-41) and describes in some detail the alleged illegal activities of the defendant as learned by law

26

enforcement officials.  This historical thread of prior intercept orders and the disclosures

of information contained therein provided to Judge Skretny on December 10, 2013 (13-

MR-77) disproves any claim by the defendant that the "omissions" wre made for the

purpose of "misleading" Judge Skretny or were "made in reckless disregard of whether

[such omissions] would mislead" Judge Skretny.  Once again, it is pointed out that Judge

Skretny had access to the prior intercept orders and the applications and affidavits upon

which they were based and the defendant has not produced anything to establish that

such a review by Judge Skretny could not have been had.  It is also once again pointed

out that whatever events occurred or whatever information existed as to the defendant's

drug activities six years ago would have been "stale" for purposes of establishing

probable cause for the issuance of the December 10, 2013 intercept Order (13-MR-77).

"It is elementary that probable cause needed to validate the issuance of an authorization

for a wiretap must exist at the time of the issuance."  *United States v. Martino*, 664 F.2d

860, 866 (2d Cir. 1981); *Rivera v. United States*, 928 F.2d 592, 602 (2d Cir. 1991).  The

probable cause evidence supporting the issuance of the December 10, 2013 intercept

Order (13-MR-77) was developed in 2013 by the use of two confidential sources as

described in paragraphs 10 through 69 of S.A. Nastoff's affidavit sworn to December 10,

2013.  As far as this Court can discern, the alleged "omissions" averred by the

defendant, if included in the affidavit of S.A. Nastoff, would in no way vitiate a finding of

probable cause and/or "necessity" by Judge Skretny for the Order of December 10, 2013

(13-MR-77).

--

As discussed above, the failure to disclose the existence of the May 18, 2007 intercept Order (07-MR-41) was due to an oversight as explained in the AUSA's letter of March 25, 2015.  Dkt. #94-3, Exhibit B.

The facts set forth in the application and affidavit presented to Judge Skretny on December 10, 2013 were more than adequate to support his determination as to probable cause and necessity for the issuance of the intercept Order of December 10, 2013 (13-MR-77).  *See United States v. Miller*, 116 F.2d 641, 663 (2d Cir. 1997); *United States v. Concepcion*, 579 F.2d 214, 217 (2d cir. 2009).

In conclusion, I find that a *Franks* hearing is not warranted since the omission of the intercept Order of May 18, 2007 (07-MR-41) was not "material" to the finding of probable cause and/or "necessity" for the issuance of the December 10, 2013 Order (13-MR-77).  Further, the defendant has failed to meet the requirements for such a hearing as mandated in *Franks v. Delaware, supra*.

## CONCLUSION

Based on the foregoing, it is recommended that the defendant's motion to suppress "electronic eavesdrop and derivative evidence" be in all respects denied.

--

It is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.**

DATED:     Buffalo, New York
           October 19, 2017


                                  *S/ H. Kenneth Schroeder, Jr.*
                                  **H. KENNETH SCHROEDER, JR.**
                                  **United States Magistrate Judge**

.